UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BALDOMERO C. RAMIREZ,

                Plaintiff,                Civil Action No. 10-cv-12042

       v.                         District Judge Victoria A. Roberts
                                  Magistrate Judge Laurie J. Michelson

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.

_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [10, 13]**

## I.  RECOMMENDATION

Plaintiff Baldomero C. Ramirez ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Social Security Disability Benefits ("DIB") under Title II of the Social Security Act.  Both parties filed summary judgment motions (Dkts. 10, 13), which are referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  (Dkts. 2,15.)  For the reasons set forth below, the Court  finds that the Commissioner's determination that Plaintiff is not disabled is supported by binding precedent and substantial evidence.  Accordingly, the Court  RECOMMENDS that  Plaintiff's Motion for Summary Judgment be DENIED, Defendant's Motion for Summary Judgment be GRANTED, and that, pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner be AFFIRMED.

1

## II.  REPORT

### A.  Procedural History

Plaintiff filed this suit on May 20, 2010, alleging that he became unable to work on July 2, 2003. (Dkt. 1, Pl's Compl. at 1; Tr. 14.)  The Commissioner initially disapproved his claim on April 19, 2005. (Tr. 34-38.)  Plaintiff then filed a timely request for a hearing, and on November 2, 2007, Administrative Law Judge ("ALJ") Earl Witten held such hearing.  (Tr. 334-58.)  Plaintiff was represented by counsel at the hearing.  (Tr. 334.)  In a decision dated November 16, 2007, the ALJ found that Plaintiff was not disabled.  (Tr. 13-20.)  The ALJ's decision became the final decision of the Commissioner on March 20, 2010, when the Appeals Council denied Plaintiff's request for review.  (Tr. 2.)

### B.  Background

Plaintiff was 45 years old at the time of the ALJ's decision.  (Tr. 22.)  He is illiterate and unable to communicate in English.[1]  (Tr. 17.)  Plaintiff previously worked as a parts checker.  (Tr. 17.)  Plaintiff suffered a right elbow injury while at work in June of 1997.  (Tr. 340.)  Subsequent to this injury, he developed an infection, and underwent two "debridements"[2] of a "right forearm mass" (Tr. 14, 334-58) in 1999.  He continued to work until July of 2003 when his employer moved from Manchester to another location.  (Tr. 349.)

---

[1] All parties agree that there is a typo on page six of the ALJ's decision stating Plaintiff is "able" to communicate in English, and that the ALJ meant to state that Plaintiff was "unable" to communicate in English.  (Tr. 17; Pl.'s Mot. Summ. J. at 10; Def.'s Mot. Summ. J. at 7.)

[2] A debridement is defined as "the removal of foreign material and devitalized or contaminated tissue from or adjacent to a traumatic or infected lesion until surrounding healthy tissue is exposed."  *Dorland's Illustrated Medical Dictionary* 481 (31st ed. 2007).

2

### 1. Plaintiff's Testimony

At the hearing before the ALJ, Plaintiff recounted, via a Spanish language interpreter, symptoms and limitations related to his "septic arthritis of [the] right elbow," and "debridement of right forearm mass and elbow joint." (Tr. 14, 334-58.)  Plaintiff testified that he can only drive for approximately fifteen minutes before his right hand "gets tired," and he has to use his other hand. (Tr. 339.)  He also testified that he experiences "a lot of pain" in his right upper arm, and numbness from this elbow through his hand.  (Tr. 340-41.)  Plaintiff stated that he can grab with his right hand, but cannot keep his arm in the same position for a long time.  (Tr. 341.)  He also testified that he could not raise his arm over his head.[3]  (Tr. 343.)   In addition, he can only lift approximately a "gallon of milk" with his right arm.  (Tr. 344.)  Plaintiff testified that he does not have any problems with his left arm besides that it is "overused" and "tired."  (Tr. 345.)  Plaintiff testified that he can sit down without restrictions, but usually needs something "ergonomic for [his] arm."  (Tr. 345.) He also stated that his right arm hurts when he is standing or walking, and it is hanging straight down.  (Tr. 345.)

Plaintiff reads the Bible and listens to Christian music at home.  (Tr. 345-46.)  He can  do a little bit of laundry and dishes.  (Tr. 346.)  Since he stopped working, Plaintiff has applied for jobs in "factories."  (Tr. 347.)  Despite this, he testified that on a scale of 1 to 10 – with "10 being the kind of pain that would drive you to the emergency room" – his pain is a 10.  (Tr. 348.) Despite this pain, he has never gone to the emergency room for pain, and takes only Tylenol and Aleve for relief. (Tr. 342-43.)

---

[3]However, when Plaintiff was asked how long he could hold up his hand, he raised his hand above his head to demonstrate.  (Tr. 343.)

2. *Medical Evidence*

It appears that Plaintiff initially hurt his elbow while at work on June 23, 1997. (Tr. 142.) At that time William R. Lee, M.D. of Chelsea Orthopedic Surgery diagnosed Plaintiff with a right elbow strain. (Tr. 142.) Dr. Lee recommended that Plaintiff not work from June 23, 1997 through June 30, 1997, and then return to work on light duty for one week. (Tr. 142.)

Subsequently, over two years later, on August 20, 1999, Plaintiff was admitted to the University of Michigan Hospital for an infection in this right elbow joint. (Tr. 255.) At the hospital, Dr. Peter Jebson, M.D. performed an irrigation and debridement of a right elbow mass. (Tr. 255.) Dr. Jebson informed Plaintiff that his infection could possibly be tuberculosis, and prescribed anti-tuberculosis medicines. (Tr. 255.) Dr. Jebson discharged Plaintiff on August 26, 1999. (Tr. 255.)

Dr. Jebson had to perform a second irrigation and debridement of Plaintiff's right elbow on October 13, 1999, due to a recurrence of his tuberculosis infection. (Tr. 253.) Dr. Jebson discharged Plaintiff on October 16, 1999 with instruction for him to keep his arm in a splint and follow-up with the University's Infectious Disease Clinic. (Tr. 253-54.)

At the request of Plaintiff's counsel, Dr. Dawson from Southeastern Orthopedics, P.C. evaluated Plaintiff's right elbow from approximately March of 2000 through April of 2004. (Tr. 114-17, 122-23.) In December of 2000, Dr. Dawson stated that Plaintiff "was capable of working unlimited number of hours." (Tr. 16-17.) In April of 2004, Dr. Dawson noted that Plaintiff "had a normal shoulder exam without complaints," but a "restricted range of motion" and "pain in his right elbow." (Tr. 123.) Dr. Dawson noted that Plaintiff was unemployed, but drawing unemployment insurance. (Tr. 122.) Unlike the earlier exam, he did not explicitly comment on Plaintiff's ability to work, but stated that Plaintiff performed activities such as shoveling snow and

4

pushing a lawn mower.  (Tr. 122.)

On March 15, 2005, Plaintiff saw R. Scott Lazzara, M.D. of Michigan Medical Consultants.

(Tr. 100.)  Dr. Lazzara noted that Plaintiff had "markedly diminished range of motion to the right

elbow due to lack of use and pain."  (Tr. 102.)  Dr. Lazzara also stated that he had "some mildly

diminished range of motion of the right shoulder, again due to lack of use."  (Tr. 102.)  However,

his grip strength and dexterity were unimpaired.  (Tr. 101.)

Plaintiff's next medical visit with regard to his arm was on June 29, 2007 with Lamont Okey,

M.D., a family practitioner in Clinton, Michigan for a routine physical exam. (Tr. 83.)  The record

does not contain relevant medical testimony beyond this date.

### 3. *Vocational Expert's Testimony*

Vocational Expert Dr. Norman Abeles testified regarding the existence of jobs for a person

of Plaintiff's age, education, work experience and residual functional capacity. (Tr. 352-57.)  The

ALJ asked VE Abeles to testify to whether Claimant would be able to perform his past relevant work

given the following restrictions:

> [H]e has the maximum sustained exertional work capacity [] which
> would allow him to lift 20 pounds occasionally and 10 pounds
> routinely with the left upper extremity.  Five pounds routinely with
> the right upper extremity, which is the dominant extremity.  Able to
> stand and/or walk six hours out of an eight-hour day.  Able to sit at
> least six hours out of an eight-hour day.  And there should be no
> overhead requirements for the job, and *reading and writing English,
> as testified to.*

(Tr. 353(emphasis added).)[4]

---

[4]  Notably, the Claimant testified as follows regarding reading and writing English:
Q.  Can you read English?
A.  No.
Q.  Can you write English?

The VE testified that Plaintiff could not perform his past relevant work given these restrictions.  (Tr. 353.)  The ALJ then asked: "Would there be jobs for an individual of the Claimant's age, education, and past work background with those restrictions?"  (Tr. 353.)  The VE responded by stating that such an individual could perform jobs as an inspector, checker, examiner, or assembler of small parts.  (Tr. 353.)  Such an individual could also perform jobs as a feeder, cleaning crew member, custodian, or janitor.  (Tr. 354.)  In the regional economy at the time, there were 15,000 inspector, checker, examiner jobs; 15,000 machine feeder jobs; 5,000 jobs as a cleaning crew member and 15,000 jobs as a custodian or janitor.  (Tr. 354.)

The ALJ then limited the hypothetical further by asking what jobs would remain if Plaintiff could not lift five pounds routinely with the right upper extremity.  (Tr. 354.)  The VE testified that there would still be about 5,000 inspector, checker and examiner jobs remaining, and about 5,000 assembly jobs.  (Tr. 354.)

Then the ALJ limited the original hypothetical in a different manner as to walking and/or standing by asking the VE what jobs would be available if Plaintiff was limited to walking and/or standing only "two hours in an eight-hour day."  (Tr. 354-55.)  The VE testified that Plaintiff  could still perform approximately 2,500 inspector, checker and examiner jobs, and 2,500 assembly jobs.

---

A.  No.
Q.  Can you sign your name?
A.  Yes.
Q.  How much English can you speak?
A.  Just a little.  Just a little.

(Tr. 338-39.)

6

(Tr. 355.)  The ALJ limited this hypothetical even further by asking what if the Plaintiff could only use the right upper extremity to support the left.  (Tr. 355.)  The VE testified that Plaintiff would still have 2,000 inspector, checker and examiner jobs and 2,000 assembly jobs available.  (Tr. 355.)  The VE testified that the jobs he cited were in the Dictionary of Occupational Titles, but the specifics about the weight limitations were not listed.  (Tr. 355.)  For those restrictions, the VE relied on his experience.  (Tr. 355.)

Finally, the VE testified that if Plaintiff's testimony with respect to his pain, discomfort, and limitations were to be found fully credible, he could not perform any jobs.  (Tr. 356.)  The VE explicitly stated that his numbers accounted for Plaintiff's "inability to read and write English clearly."  (Tr. 356.)

### C. Framework for Disability Determinations

Under the Social Security Act (the "Act"), Disability Insurance Benefits (for qualifying wage earners who become disabled prior to expiration of their insured status), and Supplemental Security Income (for poverty stricken adults and children who become disabled)"are available only for those who have a 'disability.'"  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability," in relevant part, as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

Step One: If the claimant is currently engaged in substantial gainful activity, benefits are

7

denied without further analysis.

Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th

Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the

analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers

to the [defendant]." *Preslar v. Sec'y of Health and Human Servs.*, 14 F.3d 1107, 1110 (6th Cir.

1994).

### D.  The Administrative Law Judge's Findings

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since

July 2, 2003, the alleged onset date.  (Tr. 14.)

At step two, the ALJ determined that Plaintiff had the severe impairments of "septic arthritis

of right elbow, and status post debridement of right forearm mass and elbow joint." (Tr. 14.)

At step three, however, the ALJ found that Plaintiff did not have "an impairment or

combination of impairments that meets or medically equals one of the listed impairments" in the

applicable regulations.  (Tr. 14.)  The ALJ assessed the Plaintiff's right arm impairments by the

8

criteria of Listings 1.02B, and found he did not meet the criteria because he could perform fine and gross movements effectively. (Tr. 15.)

Between steps three and four, the ALJ determined that the Plaintiff had the residual functional capacity to "lift or carry a maximum of 5 pounds occasionally and zero pounds frequently with his right upper extremity and a maximum of 20 pounds occasionally and 10 pounds frequently with his left upper extremity." (Tr. 15.) In addition, he found that Plaintiff could "walk or stand for six hours and sit for at least six hours" in an eight hour day. (Tr. 15.) Lastly, he found that Plaintiff cannot do overhead work and "needs to use his right upper extremity to support his left upper extremity." (Tr. 15.) In making these findings, the ALJ concluded that the Plaintiff's testimony regarding his symptoms credible, but not his testimony regarding "the intensity, persistence and limiting effects of these symptoms." (Tr. 16.) The ALJ noted that Plaintiff stated that his pain level was a 10 on a scale of 1 to 10, but had not gone to the emergency room for pain. (Tr. 16.) The ALJ also noted that the Plaintiff's testimony regarding problems gripping was inconsistent with the medical records of Dr. Lazzara. (Tr. 16.) The ALJ also noted that Dr. Lee stated in June of 1997 that "employment was allowable with accommodation for restrictions." (Tr. 16.) Moreover, in December of 2000, Dr. Dawson stated that Plaintiff "was capable of working unlimited number of hours." (Tr. 16-17.) Indeed, Plaintiff worked until July of 2003, when his plant closed. (Tr. 17.)

Regarding step four, the ALJ concluded that Plaintiff could not perform his past relevant work as a parts checker because of the lifting requirements of that position. (Tr. 17.)

At step five, the ALJ concluded that given Plaintiff's age, education, work experience and residual functional capacity, there were jobs that Plaintiff could perform. (Tr. 17.) The ALJ noted that Plaintiff could not perform "all or substantially all of the requirements" of "light work" under

9

the Medical-Vocational Tables ("grids").  Therefore, the ALJ elicited the testimony of a Vocational

Expert to determine the extent to which Plaintiff's "limitations erode the unskilled light occupational

base."  (Tr. 18.)  Given the VE testimony, the ALJ concluded that there were 5000 jobs as

inspector/checker in the relevant region that Plaintiff could perform.  (Tr. 18.)  Therefore, the ALJ

concluded that Plaintiff was not disabled.  (Tr. 18.)

### E.  Standard of Review

This Court has jurisdiction to review the Commissioner's final administrative decision

pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the Court "must

affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to

apply the correct legal standard or has made findings of fact unsupported by substantial evidence

in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal

quotation marks omitted).  Substantial evidence is "more than a scintilla of evidence but less than

a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal

quotation marks omitted).  In deciding whether substantial evidence supports the ALJ's decision,

this Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of

credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007);  *Rogers*, 486 F.3d at 247 ("It is

of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including

that of the claimant.").

When reviewing the Commissioner's factual findings for substantial evidence, this Court is

limited to an examination of the record and must consider that record as a whole.  *Bass*, 499 F.3d

at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  The Court

"may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston*, 245 F.3d at 535. There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." (internal quotation marks omitted)). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts" (internal quotation marks omitted)).

**F. Analysis**

In his Motion for Summary Judgment, Plaintiff contends that the ALJ failed to apply the correct legal standard in concluding that he was capable of some varieties of light work, and such a finding was not supported by substantial evidence. For the reasons stated below, both arguments fail.

*1. The ALJ Did Not Err in Finding Plaintiff Capable of Some Varieties of Light Work*

In his Motion for Summary Judgment, Plaintiff contends that the ALJ erred in concluding that he is able to perform "light rather than merely sedentary work." (Dkt. 10, Pl.'s Mot. Summ. J. at 8.) Essentially, Plaintiff wants to use the fact that he is not capable of doing *all* of the jobs in the light work category to drop himself down to the sedentary work level. (Dkt. 10, Pl.'s Mot. Summ.

11

J. at 8.)  A finding that Plaintiff could perform only sedentary work would mandate a finding of "disabled" under Section 201.00(h)(1) of the Medical-Vocational Guidelines, or "grids."  20 C.F.R. Part 404, Subpart P, Appendix 2 § 201.17, Table 1.

This argument was  rejected by the Sixth Circuit in *Wright v. Massanari*, 321 F.3d 611 (6th Cir. 2003).  In *Wright*, the VE testified that the plaintiff had the residual functional capacity for "light work, reduced by a limitation on the use of her left hand."  *Id*. at 614.  As a result, plaintiff could perform approximately 2,500 security guard jobs and approximately 1,400 hotel clerk jobs" in her region.  *Id*.  On appeal, plaintiff argued that since she could not perform every job in the "light work category," the ALJ should drop her to the sedentary category.  The Sixth Circuit held that "that is not how the process works."  *Id*. at 615.

In so holding, the Court explained that the process proceeds in two steps.  *See id*. at 615-16. Specifically, when the ALJ reaches Step Five as detailed above, he or she determines whether the plaintiff can perform any work using the plaintiff's residual functional capacity, age, education and past work experience.  20 C.F.R. § 404.1520(f)(1).  The ALJ is aided in making this determination by the grid rules.  *Wright*, 321 F.3d at 615.  "In general, where the characteristics of the claimant *exactly* match the characteristics in one of the rules, the grid determines whether significant numbers of other jobs exist for the person or whether the person is disabled."  *Id*. (citation omitted) (emphasis added).  However, where a plaintiff's impairments "do not precisely match any specific rule," the plaintiff's "residual functional capacity is used as the appropriate framework to determine whether [he or she] is disabled."  *Id*. (citation omitted).

The Court of Appeals explained that if the plaintiff does not fall into one of the grid rules the next step is described in Ruling 83-12:

> Given an individual's particular [residual functional capacity], a [vocational expert] will be able to determine the size of the remaining occupational base, cite specific jobs within the individual's [residual functional capacity], and provide a statement of the incidence of those jobs in the region of the individual's residence or in several regions of the country.

S.S.R. 83-12, 1983 WL 31253, *4 (S.S.A.).

Applying *Wright* to the case at bar, the ALJ followed this process precisely. First, the ALJ determined that Plaintiff was capable of light work reduced by lifting restrictions for the right arm, limitations on walking and standing, and limitations regarding using the left arm to support the right. (Tr. 354-55.) Thus, he found that Plaintiff was not capable of the full range of light work listed by Medical-Vocational Rule 202.16 of Table 2, Appendix2, Part 404, Subpart P, Social Security Regulation No. 4. (Tr. 18.) Rather, Plaintiff's ability to perform this type of work was impeded by his additional limitations detailed above. (Tr. 18.)

Then he asked a VE to cite specific jobs that the Plaintiff could perform by using a series of hypotheticals. *Id.* The VE testified that even given the most limiting restrictions, Plaintiff could still perform 2,000 inspector, checker and examiner jobs available, and 2,000 assembly jobs. (Tr. 355.) Therefore, the ALJ did not err in finding Plaintiff capable of some light work.[5]

---

[5] The ALJ concluded that there were 5,000 jobs as inspector/checker in the relevant region that Plaintiff could perform. (Tr. 18.) Thus, the ALJ used the VE's testimony without the limitation on using the right upper extremity only to support the left upper extremity. (Tr. 355.) With this omitted limitation, the VE found that there were 4,000 jobs Plaintiff could perform. (Tr. 354-355). Regardless, the testimony illustrates that there are 4,000-5,000 jobs available to Plaintiff. (Tr. 354-55.) This is sufficient for holding that a claimant is not disabled. *See Wright*, 321 F.3d at 614, 616 (upholding ALJ decision finding claimant not disabled based on the existence of 3,900 jobs in the state economy).

13

       *2. Substantial Evidence Supports the ALJ's Finding that Plaintiff is Able to Perform Light Work*

Plaintiff also argues that the ALJ's decision is not supported by substantial evidence because the ALJ failed to "note that the plaintiff was not only illiterate, but also unable to communicate in English." (Dkt. 10, Pl.'s Mot. Summ. J. at 10.)

The Sixth Circuit states that "[s]ubstantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only if the question accurately portrays [the] plaintiff's individual physical and mental impairments." *Varley v. Sec'y of Health & Human Servs*, 820 F.2d 777, 779 (6th Cir. 1987) (internal citations omitted); *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 632 (6th Cir. 2004).

With regard to Plaintiff's illiteracy and ability to communicate in English, the ALJ's hypothetical stated that the VE should take into account "reading and writing English, as testified to." (Tr. 353.) The VE was present for Plaintiff's entire hearing, during which Plaintiff testified through an interpreter as follows:

        Q. Can you read English?
        A. No.
        Q. Can you write English?
        A. No.
        Q. Can you sign your name?
        A. Yes.
        Q. How much English do you speak?
        A. Just a little.  Just a little.

(Tr. 339.)

In addition, the VE explicitly stated that his testimony took into account Plaintiff's "inability to read and write English clearly." (Tr. 356.) Given this testimony, and the fact that the only way

14

to understand Plaintiff was through an interpreter, this Court finds the VE considered Plaintiff's illiteracy and capacity to speak English in reaching his conclusions regarding Plaintiff's ability to work.   Consequently, the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence.

### G.  Conclusion

For the forgoing reasons, the Court  finds that the Commissioner's determination that Plaintiff is not disabled is supported by binding precedent and substantial evidence.  Accordingly, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment be DENIED, that Defendant's Motion for Summary Judgment be GRANTED, and that, pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner be AFFIRMED.

## III.  FILING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation.  *McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97.  A copy of any objections is to be served upon this magistrate judge.  E.D. Mich. LR 72.1(d)(2).  Once an objection is filed, a response is due

15

within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service

of the response.  E.D. Mich. LR 72.1(d)(3), (4).


                         s/Laurie J. Michelson_____
                         LAURIE J. MICHELSON
                         UNITED STATES MAGISTRATE JUDGE

Dated:  May 10, 2011


                    CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or
parties of record by electronic means or U.S. Mail on May 10, 2011.


                         s/Jane Johnson_____
                         Deputy Clerk