UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BALDOMERO C. RAMIREZ,

        Plaintiff,        CASE NUMBER: 10-cv-12042
                              HONORABLE VICTORIA A. ROBERTS

v.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____/

**ORDER**

**I.    INTRODUCTION**

This matter is before the Court on the parties' cross-motions for summary judgment. The Court **ADOPTS** Magistrate Judge Laurie J. Michelson's recommendation, **DENIES** Plaintiff's motion for summary judgment, and **GRANTS** Defendant's motion.

**II.    PROCEDURAL HISTORY**

On November 23, 2004, Baldomero Ramirez ("Plaintiff") filed an application for social security disability benefits alleging disability beginning on July 2, 2003. The Defendant, the Commissioner of Social Security, ("Commissioner") disapproved Plaintiff's application on April 19, 2005. Plaintiff requested a rehearing, and on November 16, 2007, Administrative Law Judge ("ALJ") Earl Witten found that Plaintiff is not disabled. The ALJ's decision became the final decision of the Commissioner on March 30, 2010, when the Appeals Counsel denied Plaintiff's request for review.

1

Plaintiff filed this claim on May 20, 2010. The case was originally assigned to Magistrate Judge R. Steven Whalen, but reassigned to Magistrate Judge Michelson on March 17, 2011.

On September 30, 2010, Plaintiff filed a motion for summary judgment arguing that the Commissioner's decision was not supported by substantial evidence and did not follow the proper legal standards. On December 1, 2011, the Commissioner filed a motion for summary judgment arguing to the contrary.

On May 10, 2011, Judge Michelson concluded the Commissioner's decision is supported by substantial evidence and binding precedent; she recommends the Court grant the Commissioner's motion for summary judgment.

## III. STANDARD OF REVIEW

The Court will affirm the Commissioner's decision if it is supported by substantial evidence in the record as a whole. *Jones v. Comm'r Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (citing 42 U.S.C. § 405(g)). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could also support the opposite conclusion. *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993).

This deferential standard presupposes that there is a "zone of choice" within which the ALJ may make a decision without being reversed. *Felisky v. Bowen*, 35 F.3d

2

1027, 1035 (6th Cir. 1994). Thus, if the Commissioner's decision is supported by substantial evidence, it must stand, regardless of whether the Court would resolve the disputed facts differently. *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In reviewing the Commissioner's decision, the Court may consider only the record that was before the ALJ, and cannot review the evidence de novo, weigh the evidence, or make credibility determinations. *See id.*

Review of a magistrate judge's recommendation on a dispositive motion is de novo. 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 72 (b)(3). "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72 (b)(3).

**IV.    ARGUMENT**

The Social Security Act provides disability benefits to a wage earner if he establishes that his impairments prevent him from performing any substantial gainful activity because of certain medically determinable physical or mental impairments. 42 U.S.C. § 423(d)(1)(A). There are five factors the Social Security Administration uses to determine if a claimant is disabled and eligible for benefits, known as the "five-step sequential evaluation process." 20 C.F.R. § 404.1520. Plaintiff must establish that: (1) he is not presently engaged in gainful employment; (2) he suffers from a severe impairment; and (3) the impairment meets or is medically equal to an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the listing") and was of sufficient duration. *Id.* If he meets his burden at step three, the inquiry ends and he is disabled within the meaning of the Social Security Act. 20 C.F.R. § 404.1520(d).

If he does not meet his burden at step three, he may do so at step four by proving he does not have the "residual functional capacity" ("RFC") to perform past work. *Jones*, 336 F.3d at 474. If Plaintiff satisfies his burden, the burden shifts to the Commissioner, at step five, to show there is other work available in the economy that the claimant can perform. *Id.* "To meet this burden, there must be 'a finding supported by substantial evidence that [claimant] has the vocational qualifications to perform specific jobs.'" *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (quoting *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 529 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). This evidence may be in the form of Vocational Expert testimony, but only if the hypothetical question posed to the expert accurately portrays claimant's individual physical and mental impairments. *Id.*

## V.    PLAINTIFF'S CLAIMS

Plaintiff challenges the final decision of the Commissioner under Title II of the Social Security Act.

On November 2, 2007, Plaintiff testified before the ALJ and he was represented by his attorney, Katherine Carter. (Tr. 336). Also present were Dr. Norman Abeles, a Vocational Expert ("VE"), Martha Herrera, a Spanish interpreter, and Tina Ramirez, Plaintiff's sister in law. (Tr. 336).

Plaintiff was born on May 16, 1961, and was 46 years old on the day of the hearing. (Tr. 338). Plaintiff has a sixth grade education, he can sign his name but cannot read or write English, and can speak "just a little" English. (Tr. 338-39).

Plaintiff was employed as a parts checker at Pilot Industries where he worked under a Spanish speaking supervisor. (Tr. 350, 353). Around June of 1997, Plaintiff

4

says he injured his right arm while helping a coworker move a heavy box. (Tr. 340, 353). After the injury, Plaintiff was moved to a restricted job inspecting small parts. (Tr. 339, 350).

Plaintiff says his job ended in July of 2003 when the company considered relocation. (Tr. 339, 349). Plaintiff believes he was terminated due to his injury; employees with less seniority were kept. (Tr. 349).

Plaintiff is right handed, and says the injury causes him to experience pain inside his right elbow, numbness in his fingers, and pain from elbow to shoulder. (Tr. 340-41). Plaintiff says he cannot keep his arm in the same position for long periods of time, and if he tries to grasp something "it just falls down." (Tr. 341). Plaintiff says his right arm can only lift the weight of about a gallon of milk, but he cannot hold onto it, or anything else, because his fingers "give up." (Tr. 344-45). Plaintiff says he can only drive for about 15 minutes before his hand gets tired and he has to use his left hand. (Tr. 339, 351).

Plaintiff does not experience problems with his left arm, other than it tires from overuse. (Tr. 345). He takes Tylenol and Aleve for pain. (Tr. 342-43). Plaintiff says his arm hurts when it is held straight down, which make it difficult to stand or walk. (Tr. 345). In August, and again in October of 1999, Plaintiff underwent surgery on his right elbow which he says failed to cure his problems. (Tr. 341-42).

Plaintiff says he cannot work because of ongoing pain in his right arm. He sees a doctor through Medicaid. (Tr. 347). Plaintiff says he received workers compensation but the payments stopped. (Tr. 349-50). Plaintiff says he would like to work despite his injury; he applied for work in three factories, none of which has called him back, but has not asked Michigan Works for help finding a job. (Tr. 347-48).

### A. The ALJ's Decision

On November 16, 2007, the ALJ went through the five-step evaluation process under 20 C.F.R. § 404.1520, and concluded that Plaintiff is not disabled within the meaning of the Social Security Act. (A.R. at 12).

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 2, 2003. (A.R. at 14). At step two, he concluded that Plaintiff suffers from septic arthritis[1] of the right elbow and status post debridement[2] of the right forearm mass and elbow joint. (A.R. at 14). At step three, the ALJ found that Plaintiff does not have impairments which meet or medically equal one of the impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (A.R. at 15).

At step four, the ALJ found that Plaintiff was unable to work his previous job, which the VE determined required lifting over 20 pounds and overhead work, both of which are beyond Plaintiff's capabilities. (A.R. at 17) (citing 20 C.F.R. § 404.1565). At step 5, the ALJ determined that a significant number of jobs remain in the national economy which Plaintiff could do with his RFC. (A.R. at 17) (citing 20 C.F.R. §§ 404.1560(c), 404.1566).

The ALJ compared Plaintiff's symptoms with the medical evidence, and concluded his condition could reasonably produce the alleged symptoms, but did not find his testimony of their severity to be credible. (A.R. at 15-16). Plaintiff said that on a scale of 1 to 10, with 10 being the kind of pain that would send him to the emergency

---

[1] Septic arthritis is inflammation of a joint due to a bacterial infection other than gonorrhea, which has different symptoms. *Pub Med Health, Septic Arthritis*, available at: http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0001466/.

[2] A debridement is "the removal of foreign material and devitalized or contaminated tissue from or adjacent to a traumatic or infected lesion until surrounding healthy tissue is exposed." *Dorland's Illustrated Medical Dictionary* 481 (31st ed. 2007).

6

room, his pain was 10. (Tr. 348). However, Plaintiff never went to the emergency room, and is only taking over the counter pain medications. (A.R. at 16).

Further, in June 1997 Plaintiff's orthopedic surgeon, William Lee M.D., said that "employment was allowable with accommodations for restrictions in [his] usual job or alternative job that accommodates [his] restrictions." (A.R. at 16).

At the request of Plaintiff's counsel, Dr. Dawson examined Plaintiff from approximately March of 2000 to April of 2004. (Rec. at 114-17, 122-23). In December 2000, Dr. Dawson determined that Plaintiff has normal motor strength throughout his right arm, and he "was capable of working [an] unlimited number of hours." (A.R. at 16-17).

Plaintiff testified he has problems grasping with his right hand, but in March 2005, Dr. Lazzara found that his grip and dexterity were normal. (A.R. at 16). Dr. Lazzara also found that he could pick up a coin, button clothing, and open a door. (A.R. at 17).

In March of 2005, Plaintiff stated he has no problems sitting, standing or walking, and can lift 10 pounds with his right arm. (A.R. at 17).

Further, the ALJ found that taking only over the counter pain relievers is not consistent with debilitating pain. (A.R. at 17; *see also* Tr. 342-43). The ALJ also found that Plaintiff had no significant treatment from April 2004 to June 2007, and there are no medical sources which say he is disabled or unable to work. (A.R. at 17).

In April 2005, a state agency medical consultant, Dinesh Tanna M.D., stated that Plaintiff was able to perform limited light work. (A.R. at 16).

The ALJ noted that Plaintiff said he stopped working in July 2003 because his plant closed and not because of his alleged disability. (A.R. at 17). Further, the ALJ

7

noted that Plaintiff says he is disabled, but has applied for jobs since the alleged date of disability. (A.R. at 16).

The ALJ found that Plaintiff's right arm can lift or carry 5 found occasionally, just not frequently. (A.R. at 15). The ALJ also determined that Plaintiff's left arm could carry a maximum of 20 pounds occasionally and 10 pounds frequently, and he can walk, stand, or sit for 6 hours in an 8 hour day but cannot do overhead work. (A.R. at 15). The ALJ stated that Plaintiff "needs to use his right upper extremity to support his left upper extremity."[3] (A.R. at 15).

Considering Plaintiff's age, education, work experience, and RFC, the ALJ concluded that a significant number of jobs remain in the national economy which Plaintiff could perform. (A.R. at 17) (citing 20 CFR §§ 404.1560(c) and 404.1566).

Based on this conclusion, the ALJ found that Plaintiff is not disabled as defined in the Social Security Act, 20 C.F.R § 404.1520(g). (A.R. at 18).

**B.     The Magistrate's R & R**

The Magistrate says that Plaintiff is arguing that because he is not capable of doing *all* of the jobs in the light work category, the Court should place him at a sedentary work level and find him disabled. (R.R. at 11). If it was found that Plaintiff could only perform sedentary work, this would result in a finding of "disabled" under Section 201.00(h)(1) of the Medical-Vocational Guidelines. (R.R. at 12).

However, the Sixth Circuit rejected this argument in *Wright v. Massanari*, 321 F.3d 611, 614-16 (6th Cir. 2003). (R.R. at 12). At the fifth step in the evaluation

---

[3] Considering Plaintiff's right arm is restricted, this should probably say Plaintiff "needs to use his upper left extremity to support his upper right."

process, the ALJ will use the grid rules in 20 C.F.R. § 404.1569 to determine if the claimant's impairments render him disabled. *Wright*, 321 F.3d at 615. If the impairments do not precisely match a specific rule, the claimant's RFC is used to determine disability. *Id.* A vocational expert will evaluate the claimant's capabilities and determine the size of the remaining occupational base available. (R.R. at 12-13) (quoting S.S.R. 83-12, 1983 WL 3153, at *4 (S.S.A.).

The Magistrate determined that the ALJ followed this process precisely, and found Plaintiff capable of light work, reduced by lifting restrictions of the right arm, and limitations on walking, standing, and using the left arm to support the right. (R.R. at 13).

Based on the finding that Plaintiff was not capable of performing the full range of light work, the ALJ asked the VE to cite specific jobs which Plaintiff could do using a series of hypotheticals. (R.R. at 13). The VE testified that even under the most limiting restrictions, Plaintiff could still perform 2,000 inspector/checker jobs, and 2,000 assembly jobs. (R.R. at 13). A claimant is not disabled if there are as few as 3,900 available jobs in the state economy. *Wright*, 321 at 614, 616. Therefore, the Magistrate found the ALJ did not error when he found that even under the most limited circumstances, Plaintiff was capable of performing a total of 4,000 jobs. (R.R. at 13).

Further, given the VE's testimony, and the fact that the only way to understand Plaintiff was through an interpreter, the Magistrate concluded the VE properly accounted for Plaintiff's illiteracy and inability to speak English. (R.R. at 14-15).

The Magistrate found that the ALJ's determination is supported by substantial evidence and binding precedent. (R.R. at 15).

9

### C. Plaintiff's Objections

Plaintiff has two objections with the Magistrate's R & R. First, Plaintiff says the Magistrate misconstrued his argument with respect to whether his disability should place him in the light or sedentary work level. (Pl.'s Obj. at 1). Plaintiff says that it was not his argument that because he is not capable of doing *all* the jobs in the light work category, the court should drop him to the sedentary level. (Pl.'s Obj. at 1). Plaintiff says his motion recognized that his inability to perform the full range of light work did not mean that he was automatically disabled. (Pl.'s Obj. at 1).

In his second objection, Plaintiff raises what he says was his actual argument, that the ALJ's decision is not supported by substantial evidence because the VE's did not state whether the jobs he testified to were in the light or sedentary category. (Pl.'s Obj. at 2).

Once it was determined that Plaintiff could not perform the full range of light work, the ALJ asked the VE a series of hypotheticals to determine how many jobs remained in this category. (Pl.'s Obj. at 2). Under the most restricted hypothetical, the VE testified that Plaintiff could work as an inspector, checker and examiner, but the Plaintiff says that the ALJ never asked which of those jobs was light as opposed to sedentary, nor did the VE offer testimony distinguishing the two categories. (Pl.'s Obj. at 2).

Plaintiff says this is a crucial omission because the Dictionary of Occupational Titles lists inspector, checker, and examiner jobs as both light *and* sedentary. (Pl.'s Obj. 2). Plaintiff says the job titles alone are insufficient to distinguish between light and sedentary work, and without the ability to make this distinction, there is not substantial

10

evidence to support a finding that he can do a significant number of those jobs. (Pl.'s Obj. at 2).

## VI. ANALYSIS

Plaintiff does not object to the Magistrate's finding that the VE properly took into account his inability to speak English. Therefore, the Court need not address that issue.

Section 201.00(h)(1) of the medical vocational guidelines directs a finding of "disabled" for individuals age 45-49 who: (i) are restricted to sedentary work; (ii) are unskilled or have no transferable skills; (iii) have no past relevant work or can no longer perform past relevant work; and (iv) are unable to communicate in English, or unable to read and write English. 20 C.F.R. Part 404, Subpart P. Appendix 2 § (h)(1). In this case, the issue is whether Plaintiff is restricted to sedentary work.

### A. The Dictionary of Occupational Titles ("DOT")

Plaintiff essentially raises only one objection to the Magistrate's R & R, which is that the ALJ's decision is not supported by substantial evidence because the DOT lists inspector, checker and examiner jobs as both light *and* sedentary, and the VE did not state how many of those jobs specifically fall in the light category.

However, under the Social Security regulations, the ALJ and VE are not obligated to rely on the DOT's classifications. *Wright*, 321 F.3d at 616 (citing *Conn. v. Secretary of Health & Human Services*, 51 F.3d 607, 610 (6th Cir. 1995). This conclusion is supported by the decision in *Barker v. Shalala*, 40 F.3d 789, 795 (6th Cir. 1994) (per curiam) where the court said the ALJ can take notice of the DOT, but the Social Security regulations provide that the DOT is not the sole source of information. *See also Basinger v. Sec'y of Health and Human Serv.*, 1994 WL 421726, at *1 (C.A.6

11

(Ohio)) (holding that the secretary and vocational expert are not required to rely on the job classifications in the DOT).

Therefore, because the ALJ and VE are not required to rely on the DOT's classifications, the fact that the DOT classifies inspector, checker, and examiner jobs as both light *and* sedentary, does not change the ALJ's finding that Plaintiff can do a substantial number of those jobs.

### B. Evaluation of the ALJ's Decision

The record contains substantial evidence to support the ALJ's finding that Plaintiff's is not disabled.

Multiple doctors examined Plaintiff, all of whom determined Plaintiff was capable of working under restricted conditions. (A.R. at 16-17). Even Dr. Dawson, who examined Plaintiff at the request of his counsel, stated that he "was capable of working [an] unlimited number of hours." (A.R. at 16-17).

Further, Plaintiff testified that on a scale of 1 to 10, with 10 being pain so severe it would drive him to the emergency room, his pain was a 10. (Tr. 348). However, the ALJ noted that Plaintiff has not gone to the emergency room and is only taking Tylenol and Aleve for his pain. (A.R. at 16; *see also* Tr. at 342-43).

Plaintiff testified that he cannot raise his right arm over his head, touch his head or mouth, and can only button the bottom button of his shirt. (Tr. 343). However, when asked how long he could hold his arm up, he raised it over his head to demonstrate. (Tr. 343).

The ALJ asked the VE what jobs would be available if Plaintiff could not do overhead work, could only lift 20 pounds occasionally and 10 pounds routinely with his

left arm, 5 pounds routinely with his right arm, and could only sit, stand, or walk 6 hours in an 8 hour day. (Tr. 353). This is almost exactly what the ALJ later determined to be Plaintiff's RFC. (A.R. at 15).

The VE testified that under this scenario, Plaintiff could perform 15,000 inspector, checker, and examiner jobs, 10,000 small part assembly jobs, 15,000 machine feeder jobs, 5,000 cleaning crew member jobs, and 15,000 janitorial and custodian jobs, for a total of 60,000 jobs in the lower half of the Lower Peninsula. (Tr. 353-54). Even under the most restricted hypothetical, a classification which the ALJ ultimately found Plaintiff was not in, the VE testified that Plaintiff could perform 2,000 inspector jobs and 2,000 assembly jobs, for a total of 4,000 jobs. (Tr. 355).

A claimant is not disabled if his RFC allows him to perform as few as 3,900 jobs. *Wright*, 321 at 614, 616. Therefore, with the capability to perform approximately 60,000 jobs, there is substantial evidence to support the ALJ's finding that Plaintiff is not disabled.

## VII. CONCLUSION

The Court **ADOPTS** the Magistrate's recommendation; **DENIES** Plaintiff's motion for summary judgment, and **GRANTS** Defendant's motion.

**IT IS ORDERED.**

                                        /s/ Victoria A. Roberts
                                        Victoria A. Roberts
                                        United States District Judge

Dated: August 4, 2011

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail onAugust 4, 2011.

s/Linda Vertriest
Deputy Clerk